Good morning. We are now going to move to our second case of this morning. This is Appeal No. 18-3644, Prairie Rivers Network v. Dynegy Midwest. We'll begin with the appellant, Mr. Smarr. Thank you, Your Honor. Good morning. Can you hear me? Yes, we can. Great. May it please the court, my name is Thomas Smarr on behalf of the appellant, Prairie Rivers Network. Your Honors, we move for summary reversal and remand of the District Court decision below because we don't think this is a close case. The District Court held the Federal Clean Water Act cannot apply to discharges of pollutants that pass through groundwater under any circumstances. In its recent decision in the County of Maui, the Supreme Court reached the opposite conclusion, holding that the Clean Water Act does apply to discharges of pollutants that pass through of direct discharges to inavigable water. In so holding, the Supreme Court emphasized that this was necessarily a fact-specific determination to be made by District Courts in the first instance. I'm going to stop you with the threshold question, please. Um, would you agree that your complaint as it currently stands does not adequately allege injuries to the individual members in order to establish associational standing? No, Your Honor, we would not agree to that. Our complaint below is consistent with the standards that apply to standing at the pleading stage, the Supreme Court's decision in Lujan, which provides that general allegations in a complaint are presumed to embrace the specific facts necessary to support the claim. And here in our complaint in paragraph 13, we did allege that Prairie Rivers Network members are harmed by pollution of the river. They use the river and enjoy the river in the immediate vicinity of the Vermilion Station, and they have concerns and injuries relating to the diminished aesthetic enjoyment of the river, the concerns over the impacts on the ecological vitality of the river, and their concerns over diminished recreation downstream of the river. And in this case, we did submit a declaration to the Court. Standing was not challenged below, so because standing is jurisdictional, we presented the Court with evidence of our standing in order to demonstrate that there are specific Prairie Rivers Network members who have those concerns. Let me try it this way, forgive me, but are you that you seek to file in this court or are you relying solely on your current complaint? We're relying solely on our current complaint, Your Honor. We believe that if the Court wishes to evaluate standing based on the complaint, the allegations in the complaint, when reasonable inferences are drawn in plaintiff's favor, as they must be at the complaint stage of the case, is more than sufficient to demonstrate that Prairie Rivers Network members are harmed and Prairie Rivers Network has standing. Thank you. So your filing with regard to the declarations, Mr. Smarr, was done in a belt and suspenders approach? Yes, Your Honor. Because standing was not challenged below, it was not challenged by Dynagy, and it was not raised by the District Court, we made the motion to provide the Court with the type of evidence that's typically available in order to evaluate standing, but we're standing to be evaluated solely on the basis of our complaint. It's more than sufficient to survive the standard at the complaint stage, which under Lujan and under the more general Bell Atlantic v. Twombly cases, it's simply that have we alleged plausibly that we have standing, and we clearly have. Does Federal Rule of Appellate Procedure 10e preclude your filing? No, Your Honor. We responded to this in our reply brief. We simply presented this issue to the Court. We think it's within the Court's discretion to consider this evidence, but it's not a motion to correct or amend the record below, so we don't think that it would preclude our You must have realized that you had an issue with standing because before filing your opening brief, you filed a motion for leave to file documents in this Court, and those documents are declarations from four of your members setting forth their injuries in very, very specific ways, and now tying those injuries to the discharge coming in from the coal pits. You see, if you'd included all that information in your complaint, there'd be no problem with standing. I think the defendants would agree to that. I'm not sure, of course, but anyway, okay. I just wanted you to see the thought process here. I understand, Your Honor, and our intent was simply to provide the Court with additional evidence rather than to suggest that there was any. I mean, our opening brief that we did make consistent allegations in our complaint, and it's our view that those allegations are more than sufficient to satisfy Lujan and other precedent. Moving back, Your Honor, to the issue concerning County of Maui, it's our view that Dinegy is asking this Court to re-litigate the County of Maui case and rewrite the Supreme Court's decision. The Supreme Court was well aware that states have traditionally regulated groundwater, but did not make the functional equivalence test contingent on the robustness of state regulatory programs, nor did the Supreme Court make Clean Water Act jurisdiction contingent on the absence of other federal statutes such as RPRA. These both could have been key considerations in County of Maui if the Supreme Court thought they were significant. The underground injection of wastewater at issue in the Maui case was regulated both by state groundwater discharge permits and by the Federal Safe Drinking Water Act, and yet the Supreme Court did not identify either of these factors as significant to its determination of the scope of Clean Water Act jurisdiction. Instead, the Supreme Court identified seven factors relating to the characteristics of the discharge, such as time and distance traveled, which it identified as the key considerations for lower courts in determining whether a discharge was present that was the functional equivalent of a direct discharge. It was these factors, and not the presence or absence of state law or other federal statutes, that the Supreme Court identified as factors that lower courts should consider, consistent with the broad and expansive language of the Clean Water Act, which requires a discharge permit for any addition of a pollutant to navigable waters from any point source. And I heard the word state, and so I'm going to ask you. The defendant asserts that you're pursuing duplicative state litigation. If the cases were to proceed in both federal and state courts, is there a possibility of conflicting judgments? Is there an abstention issue lurking in here? What's the status of that state litigation? Well, Your Honor, we filed that state litigation shortly after the district court initially dismissed our complaint. It is at a very early stage. There was a motion to dismiss filed in the Pollution Control Board that has not yet been decided. So it's functionally at the same stage as this case. It's still at the pleading stage. And the possibility of any conflict or interaction between the two cases is something that's really best left for remand here. The and the Supreme Court has directed that district courts evaluate this based on fact-specific factors in the first instance. And the mere fact that there's a pending state and federal pieces is not really surprising given the nature of the activity here. The Vermilion site, Dynagy, is disposing of over 3 million cubic yards of coal ash and unlined pits that collect and channel groundwater and discharge it into a national scenic river. And given the dangerous nature of this activity, it's no surprise that more than one set of legal requirements might apply. But there's also no reason, Your Honor, to believe that there would be any inherent conflict between enforcement of state law and enforcement of the Federal Clean Water Act. They have different but complementary goals and different in different processes that can work together. And ultimately, are there fact issues that would need to be resolved in deciding the applicability of the functional equivalence test? Or is that an issue that we could resolve as a matter of law? Ultimately, Your Honor, we believe it's one that has to be resolved on remand, given the nature of the factors, the nature of the test that the Supreme Court has articulated. There are seven factors that have been identified by the Court that ultimately boil down to whether the pollution that is arriving at the navigable waters is functionally equivalent to a direct discharge that would pass over land. And those are questions that require fact finding. The unlined pits at issue here, they may be leaking into groundwater, and some of that groundwater that's being contaminated may remain localized on the site. And there may also be a pathway that can be demonstrated through fact finding that would constitute a point source discharge. And as we noted in our reply brief, the RCRA requirements that would apply at the site would continue to apply to the localized contamination of groundwater, whereas the District Court would need to make factual findings to confirm that there is a discharge to the Middle Fork that is the functional equivalence of a direct discharge. So, Mr. Smart, are you taking the position that RCRA does apply, or RCRA applies only to certain fact components? Yes, RCRA certainly applies, Your Honor. As we explained in our briefs, there's a well-established framework that EPA has adopted for the last 40 years, and many courts have followed, including this court in the Inland Steel case, which described it as an objectively reasonable interpretation of the interplay between RCRA and the Clean Water Act, that here, if the Federal Court, if the District Court below were to find that there are actual point source discharges the Clean Water Act would apply to those, but in all other respects, RCRA would continue to apply, and that's because the statutes serve different and complementary goals, and it's Congress, it was Congress's intent that where there's any potential overlap between RCRA and the Clean Water Act, the Clean Water Act takes precedence, but the provisions in the RCRA solid waste exclusion and in the other integration provisions of RCRA recognize that the mere fact that there are different requirements under RCRA, even if they're greater, RCRA would continue to apply at the site and has an important role to play. There's a broad range of requirements under EPA regulations, the CCR rule concerning the safe operation and closure of coal ash impoundment sites such as this one, and those would all continue to apply consistent with the limitation on Clean Water Act applicability to the actual point source discharges. Your Honors, if there are no other questions on our count one claim, I would like to spend a minute just mentioning that we have the alternative argument under count two of our complaints. Count two provides an independent basis for Clean Water Act jurisdiction in this case, whether or not the coal ash impoundment discharges are ultimately found to meet the functional equivalence test, and that's because Dynagy has an active Clean Water Act permit that it is required to comply with across the entire Vermilion site based on the fact that the company is discharging to the Middle Fork through different locations that are called permittive outfalls that make this permit operative and require Dynagy to comply with it across the entirety of its site. And here there are specific conditions that we allege Dynagy is violating that do not depend on the existence of point source discharges in order to create a violation. So for example, under condition 23 of Dynagy's permit, they're forbidden from allowing wastes to enter into the Middle Fork, whether or not that happens through point source discharges. Under condition 25 of Dynagy's permit, they are forbidden to cause certain conditions in the river, discharge settleable solids, including through what the Illinois Administrative Code defines as indirect discharges, and it's our contention that Dynagy is violating those provisions and that a remand would be appropriate whether or not the court ultimately finds that the coal ash impoundment discharges here are subject to, are point source discharges subject to the functional equivalence test. Would you like to reserve the remainder of your time, Mr. Smarr? If the court has no further questions, then yes, I would like to reserve the remainder of my time. Thank you. Very good. On behalf of the Appalee, Ms. Holt. Thank you, your honors. Can you hear me all right? Yes, we can. Thank you. Good morning, and may it please the court. There's no question that this case should be dismissed. The only question is whether it should be dismissed without prejudice because there's no Article 3 standing or with prejudice because there's no Clean Water Act claim. Both roads lead to the same destination. This lawsuit cannot go forward. Let me begin. Yes, your honor. Sorry. Because standing was raised for the first time on appeal, the plaintiffs had no opportunity to amend the complaint to cure any deficiencies. How would you be prejudiced if we remanded to allow the plaintiffs to amend the complaint? And I guess a follow-up would be, would you agree that the allegations that are contained in the proposed declarations would be enough for pleading purpose to establish associational standards? Thank you, your honor. Let me let me begin with your first question. Our understanding is that the typical course, whereas here there's a facial challenge to allegations in the complaint, the typical course is for this court to remand with instructions for the district court to dismiss. I don't see any functional, I'm not aware of any functional difference, your honor, between vacating the decision and remanding with instructions to dismiss, which would leave open the possibility of filing a complaint. I'm not aware of any difference or with what your honor is suggesting in terms of remanding with instructions to file an amended complaint. We think either way we get to the same same place. With respect to your question about the allegations in the declaration, in our view those allegations only highlight what is missing from the complaint. And under this court's precedent on a facial challenge to standing, whether it is raised for the first time in the district court or before this court, a facial challenge in your challenge you're looking at are the allegations of the complaint, are they are they sufficient? So in our view the declarations are simply irrelevant and I heard in response to your questions my friend Mr. Smarr reference when you asked him about harm, concerns about the pollution and diminished recreation activities. The problem though is there is no allegation of either of those things in the complaint itself in paragraph in paragraph 13. And while it's certainly true that Justice Scalia and Lujan said that courts are entitled to rely on general allegations, those are factual allegations. And we think here the declarations only draw attention to what is missing in the complaint your honor. So again we are our position is yes your honor. You may continue. Thank you your honor. If the court nevertheless finds standing it's our that the court should affirm the district court's dismissal because applying the Clean Water Act here would both contravene the Supreme Court's mandate in Maui not to create serious risks of undermining state regulation of groundwater. And alternatively and independently it would frustrate Congress's intent and create a circuit split with the fourth and sixth circuits. Now the county of Maui test appears to call for a fact-intensive assessment. Your honor we we certainly agree that the factors the the non-exclusive list of seven factors that that that calls for a fact-specific analysis. Our argument is that the decision also sets forth a command not a suggestion but a command that decisions cannot should not create a serious risk of undermining state regulation of groundwater. We see that as a as a matter of law because here there is not just a serious risk of undermining state regulation of groundwater. There is a square conflict that would result between state law and applying the CWA permitting regime. Well explain if you would um why why why not why would why why should we not remand uh for the district court to consider it in the first instance? It's certainly your honor and we we absolutely acknowledge uh that that that this is a court of of review and not first view but but we do think this is this is a somewhat unusual situation where the decision itself sets out a mandate. Um and I I will say I I agree with my friend Mr. Smarr that this is an easy case. It's a clear case. We just think it's an easy clear case where the Clean Water Act cannot apply under county of Maui's mandate that a decision cannot create a serious risk of of undermining state regulation of groundwater. So we don't dispute that most likely as Justice Breyer's opinion said there will be middle I think he referred to them as middle instances where the factors will be needed and of course those are as your honor says fact sensitive but we also think in instances where as in our case there's a clear conflict that would result that would not just raise create serious risk but would pose square conflicts. I think also in a case and Justice Justice Breyer singled this out specifically where you have an obvious manipulation kind of on the other end of the spectrum. I think if you had an obvious end of the spectrum manipulation Justice Breyer's opinion said clearly CWA permitting would would not apply. It's you know you you both sides read county of Maui as a victory for their side. It really is your honor I think I think that is I think that is a very I think that's a very apt observation and I think specifically with respect to the issue posed in our case the court was very concerned with not extending CWA jurisdiction. It rejected the Ninth Circuit's test and it did so precisely because it didn't want to tranche on state regulation of groundwater and so I think one one reason why we think it would be helpful for this court to reach the issue is we think it it would provide helpful guidance to the lower courts because we think this case no pun intended sets a very it's a straightforward case it's a high watermark of where you have a four square conflict with state regulation of groundwater as you do here. You see what I'm trying what I'm trying to figure out is is this it's a fact intensive inquiry that does not seem to be appropriate for a court of appeals to take up in the first instance. I in other words a hearing might be needed on on the the big dispute here which is whether the discharge here is a substantially equivalent under county of Mallard. Yes yeah completely understand and take your point uh your your honor our our submission is just a narrow one that that this is um what what may well turn out to be an exceptional case where the court's mandate about what a decision cannot do it cannot create a substantial risk is is straightforward and that our submission is that that question can be answered as as a matter as a matter of law and let me let me move on. Ms. Holt before you move on a question if we consider this in terms of a Venn diagram with the Clean Water Act then we've got state regulatory authority. Do those two circles intersect do they stand next to each other and I won't ask to have Rickra enter into that yet or is my Venn diagram metaphor inapt? Um no I think that's I think that's a very apt apt metaphor and I think the court um if you'll let me answer it answer it this way answer your question this way um I think throughout its decision the court was very concerned that it not trench um on state regulation of groundwater. So it honed in on an obvious manipulation of a pipe um and I think the court was really focused laser-like on on two sort of uh north stars if you will. First was not intruding upon state regulation of groundwater any more than this Clean Water Act had which was not at all. The second thing it was focused on was at the same time it didn't want to allow an obvious loophole in in the federal regime. So it in in my reading of County of Maui the reason Justice Breyer was so insistent on saying after he went through the factors reiterating the importance of of any decision along these lines should not create a serious risk of undermining state regulation of groundwater. However however whatever way the factors point um they there cannot be CWA permitting if you would create a serious risk because I think that that was the reason that the court rejected the Ninth Circuit standard standard there. So the two circles sitting next entirely responsive to your question. So there's two circles sitting next to each other but not overlapping. Yes I think I think that's I and I think that's why Justice Breyer was so insistent on the functional equivalency right because we're we know that the CWA did not want Congress did not want to tranche on state regulation. So it's either a direct discharge which doesn't do that or the functional equivalent which doesn't do that either. So moving on um briefly to to our alternative uh independent argument about RCRA. Dismissal is warranted for the second independent reason that applying the Clean Water Act here would displace the regulatory regime that Congress specifically designed to deal with such discharges. RCRA as amended by the Winn Act comprehensively regulates discharges from Coal Act impoundments into groundwater but it also makes RCRA and the Clean Water Act mutually exclusive when it comes to regulating point source discharges which are the only discharges that are being alleged in this case and that's at section 6903 27 and that defines solid waste not to include industrial discharges which are point sources subject to permits under section 1342 of title 33. So we don't disagree um with my friend Mr. Smarr at all that there will be instances of overlap between RCRA and the CWA. This case is most emphatically not one of them because of the plain text of the point source exclusion which provides that in terms of the regulation of this groundwater a choice has to be made. It cannot be both. It has to be RCRA or it has to be the CWA and so in our circuits have have explained particularly the sixth circuit in Kentucky waterways it would upend the regulatory scheme and fundamental principles of statutory construction to apply the Clean Water Act a more general earlier enacted statute over RCRA the later more specific statute that Congress designed specifically to address discharges CCR under these precise circumstances. So in our view this is this argument is a confirmation it confirms why the Clean Water Act cannot apply here and why dismissal is appropriately affirmed by this court without a need to demand. And finally I will say just a few words about count two. Count two fails as derivative of count one. Both claims require a jurisdictional discharge because both claims are brought under section 1311a. The complaint alleges at paragraph 74 that quote by violating the conditions of the permit Dinergy has violated and is continuing to violate the CWA quote citing section 1311. And Prairie Rivers itself explains at five note two of its opening brief that quote the Clean Water Act prohibits the discharge of any pollutant unless authorized in relevant part by an NPDES permit. The statute defines discharge as any addition of any pollutant. So in our view both count one and count two require a jurisdictional discharge. So if there is no jurisdictional discharge for purposes of count one as the district court correctly held and as we've argued two alternative reasons count two meets meets the same fate. So Ms. Ho you read Judge Bruce's decision that accounts one and two stand or fall together. Yes your honor that's correct because because there is both counts require by virtue of both alleging a violation of 1311a both require a jurisdictional discharge and and the only jurisdictional discharge the only discharge uh we say it's not jurisdictional but the only discharge that this complaint has alleged um is this is the same discharge that is the basis of of count one. So you're right they they they fall together in our view for lack of a jurisdictional discharge. Different reasons we're advancing than the district court held but the end result is the same. And and just briefly I did want to pick up on one thing your honor uh raised uh is the the pendant lawsuit that is that is ongoing that's before the Illinois Pollution Control Board and that is based on the same allegations uh as this as this case seeks the relief in this case and we think that is strong corroboration both of the strength and robustness of Illinois regulation of groundwater and it shows there's there's no need to stretch Clean Water Act jurisdiction to cover the alleged discharges here. Thank you Ms. Ho. If there are no further questions I'll give back the balance of my time to the court. Thank you Ms. Ho. Mr. Smarr we'll go back to you for rebuttal. Thank you your honor. I'd like to start with the discussion circling back to the discussion concerning standing. It has never been a requirement that associations name their individual members and allege the same types of specifics that would be expected in testimonial evidence in a complaint. None of the cases that Dynegy has relied on require that and all of the case law that Dynegy is relying on in this case involve court evaluation of testimony. It's a very different standard when testimony is at issue and so we would again renew our request that the court review our complaint under the standard in Lujan that general allegations of standing are assumed to embrace the specific facts necessary to demonstrate harm. Concerning the concerning the issue I'm sorry I'm getting some feedback. I think it's feedback. Concerning the issue of whether there's a conflict here I think it's worth noting as we point out in our reply brief that EPA and states have permitted under the Clean Water Act discharges like this for decades and there's never been any any evidence that permitting a discharge to a surface water through a hydrologically connected groundwater would in any way undermine the state's traditional authority over regulating groundwater itself. Here in this case it's worth noting that Illinois state agencies would be involved in administering both laws and both the state groundwater laws and the Clean Water Act permitting and would be able to use their discretion to address any possibility of conflict between requirements under the different provisions and this was a position that the state of Illinois took in the Maui case. The Supreme Court in which it asked the court to recognize Clean Water Act jurisdiction over discharges that pass through groundwater. So clearly the state of Illinois is not concerned about this issue of a conflict and there's no again as I said earlier there's no evidence there would be any conflict in this case at a minimum that's something that would need to be addressed on remand once there's a full factual record available. I'd also like to note that County of Maui did not limit its functional equivalence tests to intentional discharges. The Clean Water Act is a strict liability statute and the Supreme Court would not have read into its interpretation of what it characterized as the broad and expansive language of the Clean Water Act a requirement that discharges be intentional. It does not actually exist in the statute. Concerning the point source exclusion this is not an all or nothing proposition as I explained earlier. EPA since 1980 has limited the RCRA point source exclusion to actual point source discharges so again this is an issue that would need to be addressed on remand. Groundwater is not a single thing. It is a complicated subsurface medium and when EPA adopted its interpretation of the RCRA point source exclusion in 1980 it expressly stated that the reason it was limiting the applicability of the point source exclusion to actual point source discharges is because it intended it was very important for RCRA to continue to apply to localized groundwater contamination at a site. Finally your honors with respect to count our complaint which is that Dynagy is discharging as it does not dispute to the middle fork pursuant to a permit. Clean Water Act permits are like contracts and once Dynagy initiates that discharge and gets a permit it's required to comply with that permit throughout the entirety of its site. So the bottom line here your honors is that the plain language of that permit those permit conditions is what controls and we've alleged that Dynagy is violating that permit here and that's another reason why reversal and remand is required. Unless the court has any further questions. Thank you Mr. Smarr. Thank you Ms. Ho. The case will be taken to revisement. The court will be taking a 10-minute recess.